IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                                          PLAINTIFF

VS.                    Criminal No. 5:17-CR-50014-TLB-MEF-1
                       Civil No. 5:18-cv-05157-PKH-MEF

ANGELA RENEE BURKE                                                DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed August 9, 2018. (ECF No. 47). The United States filed its response on September 10, 2018. (ECF No. 49). Defendant filed a reply on November 26, 2018. (ECF No. 52). The matter is ready for report and recommendation.

## I. Background

Defendant, Angela Renee Burke ("Burke"), was named in an Indictment issued on March 1, 2017, charging her with conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. (ECF No. 1). Burke was arrested on March 20, 2017. (ECF No. 13). She was brought before the Hon. Erin L. Wiedemann (formerly Setser), U.S. Magistrate Judge, on March 21, 2017 for arraignment, at which time Burke entered a plea of not guilty to the Indictment. (ECF No. 7). Jack Schisler ("AFPD Schisler"), an Assistant Federal Public Defender for the Western District of Arkansas, was appointed to represent Burke. (*Id*.; Text Only Order entered on March 21, 2017).

On April 27, 2017, Burke appeared with counsel before the Hon. Timothy L. Brooks, U.S. District Judge, for a change of plea hearing. (ECF No. 14). A written Plea Agreement was presented to the Court wherein Burke agreed to plead guilty to the one-count Indictment charging her with

-1-

conspiracy to distribute methamphetamine.  (ECF No. 15, ¶ 1).  The Court reviewed the Plea Agreement with Burke, advised her of her rights and the maximum penalties, and Burke entered a plea of guilty to the Indictment.  (ECF No. 14).  The Court determined Burke's guilty plea was voluntary and supported by an independent basis in fact; her guilty plea was accepted and she was found guilty as charged.  (*Id*.).  Tentative approval of the Plea Agreement was expressed pending completion of a presentence investigation report ("PSR").  (*Id*.)

An initial PSR was prepared by the United States Probation Office on July 7, 2017.  (ECF No. 24).  Burke made five objections to the PSR on July 20, 2017.  (ECF No. 25).  All of Burke's objections to the PSR related to factual matters that did not effect the guidelines calculation.  (ECF No. 25).  No objections to the PSR were made by the United States.  (ECF No. 26).  U.S. Probation verified the information provided by Burke in her objections, and revisions were made in the final PSR that was submitted to the Court on July 26, 2017.  (ECF Nos. 27, 27-1).

The final PSR determined that Burke was accountable for 203.8 grams of actual methamphetamine.  (ECF No. 27, ¶¶ 15, 17).  As a result, Burke's Base Offense Level was determined to be 32.  (*Id*., ¶ 22).  No adjustments were made for specific offense characteristics, victim related characteristics, role in the offense, or obstruction of justice.  (*Id*., ¶¶ 23-26).  The PSR noted that Burke met the qualifications for a career offender pursuant to U.S.S.G. § 4B1.1; however, the offense level from the table in § 4B1.1(c) was the same as the offense level otherwise applicable. (*Id*., ¶ 28).  After a three-level reduction for acceptance of responsibility, Burke's Total Offense Level was determined to be 29.  (*Id*., ¶¶ 29-31).  Burke had a criminal history score of 12, placing her in Criminal History Category V.  (*Id*., ¶¶ 54-56).  The PSR again noted that Burke met the criteria for a career offender, and that a career offender's criminal history category in every case shall

be category VI pursuant to U.S.S.G. § 4B1.1(b).  (*Id*., ¶ 57).  The statutory maximum term of imprisonment for the offense of conviction is 20 years.  (*Id*., ¶ 92).  Based upon a Total Offense Level of 29 and a Criminal History Category of VI, Burke's advisory guidelines range was determined to be 151 to 188 months imprisonment.  (*Id*., ¶ 93).

On August 2, 2017, AFPD Schisler filed Defendant's Sentencing Memorandum in which he argued that Burke is a drug addict; that she began her drug use at a very early age; appeared to have had little, if any, adult supervision during that time; and, that a downward variance to a sentence of 96 months, or eight years, would comport with the sentencing factors and requirements of 18 U.S.C. § 3553.  (ECF No. 29).

Burke appeared with her counsel for sentencing on August 16, 2017.  (ECF No. 30).  The Court made inquiry that Burke was satisfied with his counsel; it was determined that Burke and her counsel had the opportunity to read and discuss the PSR; the PSR was reviewed in open court; both the United States and Burke's counsel were afforded the opportunity to make a statement to the Court; Burke was afforded the opportunity to make a statement and present information in mitigation of sentence; and, the Court granted Burke's request for a downward variance and imposed a below guidelines sentence of 110 months imprisonment, four years of supervised release, a fine of $2,400.00, and a $100.00 special assessment.  (*Id*.).  Judgment was entered by the Court on August 18, 2017.  (ECF No. 31).  Burke did not pursue a direct appeal from the Judgment.

Burke filed a Motion for Reduction of Sentence on June 19, 2018.  (ECF No. 44).  While applauding Burke's "active steps to turn her life around and overcome her addiction," the Court found no valid legal basis for reducing the sentence imposed, and Burke's motion was denied on June 19, 2018.  (ECF No. 45).

-3-

On August 9, 2018, Burke filed her *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "motion"). (ECF No. 47). The motion asserts three grounds for relief: (1) ineffective assistance of counsel for not objecting to an incorrect assessment of criminal history points; (2) ineffective assistance of counsel for not requesting a minor role reduction; and, (3) that she should have been sentenced under the methamphetamine-mixture guideline rather than the actual/pure methamphetamine guideline. (*Id.*, pp. 4-6, 14-17).

The United States filed a response to the motion on July 10, 2018. (ECF No. 49). The Government contends that Burke's criminal history score was properly calculated, that counsel exercised reasonable trial strategy by not arguing for a minor role reduction, and that Burke was not prejudiced by counsel's decision not to argue for sentencing under the methamphetamine mixture guideline. (*Id.*) Burke filed a reply on November 26, 2018. (ECF No. 52).

## II. Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner

or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

A thorough review of Burke's motion and the files and records of this case conclusively shows that Burke is not entitled to relief, and the dismissal of her motion is recommended.

### A. Burke's Criminal History Score Was Correct

Burke first claims that counsel should have objected to her criminal history score as reported in the PSR. Her argument misapprehends the Sentencing Guidelines and has no merit. Her prior felony convictions were properly counted separately; her criminal history score was actually miscalculated *in her favor*; and, she suffered no prejudice because she was properly classified as a Career Offender under Chapter Four of the Sentencing Guidelines.

### 1. Burke's Prior Convictions Were Properly Counted Separately

Burke contends she should not have received three criminal history points for each of her prior felony convictions reported in paragraphs 48 and 51 of the PSR. (ECF No. 47, p. 14). Burke's argument is based upon the fact that she was sentenced on the same date in each of those cases following probation revocations stemming from a single arrest for another offense. (*Id*.). Her claim ignores U.S.S.G. § 4A1.2 which requires her prior convictions and sentences to be treated separately.

The two prior convictions at issue arose from arrests made on July 11, 2012 (ECF No. 27, ¶ 48) and September 22, 2013 (*Id*., ¶ 51). While Burke requested additional information be added to paragraphs 48 and 51 (noting that she did not have any pending parole revocation proceedings), Burke made no other objections to these two prior convictions in the PSR (ECF No. 27-1, p. 1), and it is clear that the prior convictions were for offenses separated by intervening arrests. Burke mistakenly believes that her arrest for Delivery of Methamphetamine and Possession of

-5-

Methamphetamine with Purpose to Deliver on September 22, 2013 (ECF No. 27, ¶ 51), which led to a probation revocation in her prior case on November 21, 2013 (*Id*., ¶ 48), transformed those two convictions into a single sentence for guidelines purposes.  Contrary to Burke's argument, "[u]nder the guidelines ... an intervening arrest ends the inquiry."  *United States v. Simms*, 695 F.3d 863, 865 (8th Cir. 2012) (quoting *United States v. Crippen*, 627 F.3d 1056, 1066 (8th Cir. 2010), *cert. denied*, 563 U.S. 1013 (2011)).  Additionally, it has long been held in the Eighth Circuit that a defendant's unrelated prior convictions do not become related for purposes of the Sentencing Guidelines when probation on the prior convictions is revoked and the defendant is ordered to serve original terms of imprisonment concurrently.  *See, e.g., United States v. Jones*, 87 F.3d 247, 248 (8th Cir. 1996).

U.S.S.G. § 4A1.2(k)(1) provides, "[i]n the case of a prior revocation of probation, parole, supervised release, special parole, or mandatory release, *add the original term of imprisonment to any term of imprisonment imposed upon revocation*."  (Emphasis added.).  Burke was originally sentenced to six years probation for her July 11, 2012 arrest and conviction; but, upon revocation of her probation on November 21, 2013, she was sentenced to 120 months imprisonment with 72 months suspended.  (ECF No. 27, ¶ 48).  The total length of Burke's original sentence, when added to the sentence imposed upon revocation, exceeded one year and one month, so three criminal history points were correctly assessed for Burke's probation revocation sentence pursuant to U.S.S.G. § 4A1.1(a).

Finally, Application Note 11 to U.S.S.G. § 4A1.2(k)(1) instructs that if, "at the time of revocation another sentence was imposed for a new criminal conviction, that conviction would be computed separately from the sentence imposed for the revocation."  On November 21, 2013, Burke was sentenced to a term of 240 months imprisonment, with 120 months suspended, and 62 days jail

time credit, for the felony drug offenses that triggered the revocation in her earlier case. (ECF No. 27, ¶ 51). Three criminal history points were properly assessed for that conviction. (*Id.*).

Accordingly, the prior conviction reported in paragraph 48 of the PSR was properly counted separately and assessed three points. It was also correct to consider Burke's November 21, 2013 conviction separately and to assess three points for it. There was no error in counting Burke's prior sentences separately.

### 2. Burke's Criminal History Score Was Improperly Calculated - in Her Favor

Burke contends she "should have only been pointed a total of 4 points for the charges that occurred on the dates of 1-9-13, 7-11-12 and 9-12-13." (ECF No. 47, p. 14). She is wrong about this, and the PSR actually miscalculated her criminal history score *in her favor*.

As just discussed above, Burke's prior sentences were properly counted separately. This resulted in three points being assessed for Burke's prior sentence upon revocation on November 21, 2013 in Case No. CR 12-1247-6 (ECF No. 27, ¶ 48), and three points also being assessed for Burke's prior sentence imposed in the offense that triggered the revocation on November 21, 2013 in Case No. CR 13-1786-6 (ECF No. 27, ¶ 51).

The miscalculation relates to Burke's first drug offense conviction and sentence. Burke was arrested on December 16, 2011 and charged with Delivery of Methamphetamine in the Circuit Court of Benton County, Arkansas, in Case No. CR 12-232-1. (ECF No. 27, ¶ 44). On July 16, 2012, she was sentenced to six years probation, two days jail time credit, and a fine of $1,960. (*Id.*). Then, as a result of her arrest on September 22, 2013, Burke's probation in Case No. CR 12-232-1 was revoked on January 9, 2014, and Burke was sentenced to 120 months jail with an additional 120 months suspended, to run concurrently with CR 13-1786-6 and CR 12-1247-6. (*Id.*). Thus, the total

length of sentence imposed in CR 12-232-1 exceeded 13 months, and three criminal history points should have been assessed in the PSR. Burke, however, was incorrectly assessed only one criminal history point for that prior sentence. (*Id.*).

Burke's prior sentences were correctly counted separately, and she should have received a total of nine points for those three prior sentences. Instead, Burke was incorrectly assessed only seven criminal history points for those sentences. She cannot, therefore, establish any prejudice from the error.

### 3. Burke is a Career Offender

Pursuant to U.S.S.G. § 4B1.1(a), a defendant is a "Career Offender" if: (1) the defendant was at least 18 years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and, (3) the defendant has at least two prior convictions of either a crime of violence or a controlled substance offense.

Burke was age 32 at the time she committed the instant offense. (ECF No. 27, p. 2, ¶¶ 7-17). The instant offense, Conspiracy to Distribute Methamphetamine, is a felony controlled substance offense. (*Id.*, p. 1). Finally, Burke has at least two prior felony convictions of a controlled substance offense. (*Id.*, ¶¶ 44, 48, 51). Burke satisfies all three Career Offender criteria.

Burke was found to be a Career Offender pursuant to U.S.S.G. § 4B1.1(a) in the PSR. (ECF No. 27, ¶ 28). She did not object to that finding in the PSR. "A fact in a PSR to which the defendant has not specifically objected is a fact admitted by the defendant." *See United States v. Abrica-Sanchez*, 808 F.3d 330, 334 (8th Cir. 2015) (quoting *United States v. White*, 447 F.3d 1029, 1032 (8th Cir. 2006)).

-8-

U.S.S.G. § 4B1.1(b) provides that if a defendant is classified as a Career Offender, then the criminal history category in every case shall be Category VI. The PSR reported this. (ECF No. 27, ¶ 57). Again, Burke did not object. Regardless of the calculation relating to the number of criminal history points, Burke's criminal history category is VI because she is a Career Offender. As a result, Burke can show no prejudice from the calculation of her criminal history score.

It would have been futile for defense counsel to object to her criminal history score, and it cannot be ineffective assistance not to raise a meritless argument. *Larson v. United States*, 905 F.2d 218, 219 (8th Cir. 1990); *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994).

Burke's first ground for relief should be denied.

### B.  Failure to Request Minor Role Reduction

Burke next claims defense counsel should have requested a minor role reduction at sentencing. (ECF No. 47, p. 16). Burke's allegations are insufficient to support her claim. Under the circumstances, counsel acted reasonably in making a strategic decision not to seek a minor role reduction, and Burke can show no prejudice since her counsel's alternative approach to seek a downward variance was successful.

### 1.  Vague and Conclusory Allegations are Insufficient

After discussing how Amendment 794 modified the commentary to U.S.S.G. § 3B1.2, Burke alleges she is "qualified for a minor/minimal role and that defendant's attorney was ineffective for failing to ask for the reduction ..."  (ECF No. 47, p. 16). She fails to explain what specific facts of the case qualify her for the reduction, and her allegation falls well short of the standard required to support a § 2255 claim. *See Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir. 1986) (vague and conclusory allegations are not sufficient to state a ground for relief under 28 U.S.C. § 2255), *cert.*

*denied*, 479 U.S. 965 (1986); *Carpenter v. United States*, 720 F.2d 546, 548 (8th Cir. 1983) (conclusory allegations are insufficient to rebut the presumption of competency granted to defense counsel); *Smith v. United States*, 677 F.2d 39, 41 (8th Cir. 1982) (conclusory allegations, unsupported by any specifics, are subject to summary dismissal).

### 2.   Defense Counsel Acted Reasonably

U.S.S.G. § 3B1.2, Mitigating Role, provides:

"Based on the defendant's role in the offense, decrease the offense level as follows:

(a)     If the defendant was a minimal participant in any criminal activity, decrease by **4** levels.

(b)     If the defendant was a minor participant in any criminal activity, decrease by **2** levels.

In cases falling between (a) and (b), decrease by **3** levels."

"The propriety of a downward adjustment is determined by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable and by measuring each participant's individual acts and relative culpability against the elements of the offense." *United States v. Pruneda*, 518 F.3d 597, 606 (8th Cir. 2008) (citing *United States v. Belitz*, 141 F.3d 815, 818 (8th Cir. 1998)).   The fact that a defendant is less culpable than another participant in the criminal activity is not, in and of itself, enough to warrant a downward adjustment when the defendant was in fact deeply involved in the criminal activity.  *Id*.  Even a defendant who is decidedly less culpable than his co-defendants, however, is not entitled to the minor role reduction if he is deeply involved in the criminal acts.  *United States v. Gayekpar*, 678 F.3d 629, 639 (8th Cir. 2012) (citing *United States v. Alvarez*, 235 F.3d 1086, 1090 (8th Cir. 2000)).   It is the defendant's burden to establish that a minor participant reduction is warranted.  *Pruneda*, 518 F.3d at 606.

Here, the PSR determined that Burke was responsible for 203.8 grams of actual methamphetamine. (ECF No. 27, ¶ 15). Burke did not object to this finding. As previously noted, a fact reported in a PSR not specifically objected to is a fact admitted by the defendant. *Abrica-Sanchez*, 808 F.3d at 334. That amount of methamphetamine, well over seven ounces, is not a user quantity of the drug, and the fact that multiple small plastic baggies were located in Burke's car at the time of her arrest (ECF No. 27, ¶ 13) also shows that Burke intended to distribute methamphetamine. In her Plea Agreement, Burke admitted that she conspired with others to possess methamphetamine with the intent to distribute it. (ECF No. 15, ¶ 4(h)).

Contrary to Burke's claim, defense counsel did take measures to present Burke in a more positive light, and counsel's efforts were successful. While no downward adjustment for role in the offense was sought pursuant to U.S.S.G. § 3B1.2, defense counsel did argue for a downward variance based upon Burke's history and characteristics, notably her addiction to methamphetamine from an early age. The argument was successful, as the Court granted a downward variance from the advisory guidelines range of 151 to 188 months down to 110 months (representing a four-level downward variance). (ECF No. 32, p. 4). While acknowledging that Burke "was involved in the distribution of drugs, and she has an extensive criminal history," the Court also noted: Burke "is believed to be a drug addict; she sold drugs to support her habit; she was raised in an abusive and neglectful household; she has learning disabilities; the instant offense is non-violent; [she] is not the typical career offender; and, [she] appears genuinely remorseful, all of which the Court finds mitigating." (ECF No. 32, p. 4).

The United States contends Burke's counsel was not unreasonable for failing to seek a downward adjustment pursuant to U.S.S.G. § 3B1.2, as counsel would have been aware that courts

"are loath at finding drug defendants who are also involved in the distribution of drugs as being minor or minimal participants." (ECF No. 49, p. 14). *See e.g., United States v. Sharkey*, 895 F.3d 1077, 1081 (8th Cir. 2018) (reduction denied where defendant over five-month period distributed at least 113 grams of methamphetamine); *United States v. Bradley*, 643 F.3d 1121, 1129 (8th Cir. 2011) ("this court has consistently rejected the argument that a distributor of controlled substances deserves a minor-role reduction simply because of the presence of a larger-scale upstream distributor"); *United States v. Brubaker*, 362 F.3d 1068, 1071 (8th Cir. 2004) (reduction denied where large quantity of methamphetamine was involved; packaging of smaller quantities indicated an intent to redistribute; and defendant was a drug dealer); and, *United States v. Youngpeter*, 986 F.2d 349 (10th Cir. 1993) (denial of minimal or minor participant reduction in drug conspiracy where proof showed defendant was either mid-level or street-level dealer).

Because of this well established precedent, the United States argues it was reasonable for Burke's counsel to have made the strategic decision not to pursue a downward adjustment under U.S.S.G. § 3B1.2, and to instead advance an alternative argument for the Court to grant a downward variance based upon sentencing factors set forth in 18 U.S.C. § 3553(a). (ECF No. 49, pp. 14-15). Strategic decisions, of course, "made after thorough investigation of law and facts ... are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

Burke first used methamphetamine at age 13 and is an admitted methamphetamine addict; however, she also admitted to actively participating in a conspiracy to distribute a large quantity of methamphetamine. Defense counsel did not, therefore, act unreasonably in deciding not to seek a minor role reduction, but instead to seek a downward variance due to Burke's personal history and characteristics. Considering the circumstances, the undersigned cannot conclude that defense

-12-

counsel's efforts fell below the "range of competence demanded of attorneys in criminal cases." *Strickland*, 466 U.S. at 688. Thus, Burke has failed to establish the deficient performance prong of her claim.

### 3. Burke Has Shown No Prejudice

Moreover, Burke has not shown any prejudice from counsel's decision to pursue the downward variance rather than a minor-role reduction. Burke's advisory guideline range was 151 to 188 months imprisonment, but the Court granted defense counsel's motion for a downward variance based upon Burke's personal history and characteristics and imposed a below-guidelines sentence of 110 months imprisonment. (ECF No. 32, p. 4). Other than her vague and conclusory allegation that she "qualified for a minor/minimal role and that [her] attorney was ineffective for failing to ask for the reduction" (ECF No. 47, p. 16), Burke offers no facts showing any prejudice resulting from counsel's conduct.

Burke's second ground for relief should be denied.

### C.  Use of Actual Methamphetamine Guideline

Burke's final claim for relief is that the Court should have used the methamphetamine mixture guideline, rather than the actual methamphetamine guideline, in determining her sentencing range. This argument is based on two decisions from United States District Judges in Iowa who have concluded, *inter alia*, that there is no longer an empirical basis for the Sentencing Guidelines' purity focus to support a 10:1 ratio for actual (or ice) methamphetamine versus a mixture of methamphetamine. Burke's claim, however, is procedurally defaulted. And, to the extent Burke's claim may be construed as one of ineffective assistance of counsel for not objecting to use of the actual methamphetamine guideline instead of the mixture of methamphetamine guideline, defense

-13-

counsel may not be faulted for failing to anticipate changes in the law or to raise a novel issue concerning unsettled law. Finally, since Burke was sentenced as a Career Offender under the guidelines, she can show no prejudice in the calculation of her offense level and sentencing range.

### 1. Burke's Claim is Procedurally Defaulted

Burke cannot raise her Sentencing Guidelines issue for the first time in a § 2255 motion.

The United States Supreme Court has "long and consistently affirmed that a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982) (internal citations omitted). Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). The circumstances under which a guilty plea may be attacked on collateral review are strictly limited, and "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). Even the voluntariness and intelligence of a guilty plea can be attacked on collateral review *only* if first challenged on direct review, as "[h]abeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Bousley v. United States*, 523 U.S. 614, 621 (1998) (internal quotation marks and citation omitted). "[T]he concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *Id.*

In this case, Burke pleaded guilty and did not pursue any relief on direct appeal. By failing to appeal, Burke procedurally defaulted the Sentencing Guidelines claim she now raises.

This procedural default may be excused only if Burke "can show both (1) a cause that

excuses the default, and (2) actual prejudice from the errors that are asserted." *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997) (quoting *Bousley v. Brooks*, 97 F.3d 284, 287 (8th Cir. 1996)); *Apfel*, 97 F.3d at 1076; and, *Frady*, 456 U.S. at 167-68. "For cause to exist, the external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991).

Burke makes no such showing here. She fails to demonstrate how the factual basis for her claim was not reasonably available to her in time to pursue relief on direct appeal. Further, there is no assertion by Burkee that some interference by Government officials, or some external impediment, prevented her from raising her claim on direct appeal.

Since Burke has not shown adequate cause to overcome the procedural bar in her case, the Court need not consider the issue of actual prejudice. *Ashker v. Class*, 152 F.3d 863, 871 (8th Cir. 1998) (citing *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982)). Additionally, Burke neither claims nor demonstrates miscarriage of justice through actual innocence. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup v. Delo*, 513 U.S. 298, 316 (1995).

Burke has failed to demonstrate "cause and prejudice" or a "miscarriage of justice" to overcome the procedural default of the Sentencing Guidelines claim she now asserts, and her third ground for relief should be denied.

## 2. No Duty to Anticipate Changes in the Law

Burke's PSR was initially prepared on July 7, 2017. (ECF No. 24). The final PSR and

Addendum was filed with the Court on July 26, 2017. (ECF No. 27). Burke was sentenced on August 16, 2017. (ECF No. 30). The cases relied on by Burke, *United States v. Nawanna*, 321 F.Supp.3d 943 (N.D. Iowa 2018) and *United States v. Harry*, 313 F.Supp.3d 969 (N.D. Iowa 2018), were both decided nearly a year after Burke's sentencing. Construing Burke's third ground for relief as one of ineffective assistance of counsel for not challenging use of the actual methamphetamine guideline instead of the mixture of methamphetamine guideline, Burke's counsel cannot be faulted for failing to anticipate a rule of law that had yet to be articulated or for failing to raise a novel argument based on unsettled legal questions.

*Nawanna* and *Harry* raise interesting legal issues concerning the sentencing of offenders under the methamphetamine guidelines. As Judge Bennett[1] observed in *Nawanna*, "no United States Court of Appeals has provided guidance to district courts to reject the methamphetamine Guidelines, presumably because of the district courts' wide discretion to decide the weight of the Guidelines." 321 F.Supp. 3d at 948. "But several district courts have found that the Guidelines ranges for offenses involving actual/pure methamphetamine, like their crack-cocaine counterparts, are not based on empirical data and national experience, and thus do not exemplify the Commission's exercise of its characteristic institutional role." *United States v. Ferguson*, 2018 WL 3682509, * 3 (D. Minn. Aug. 2, 2018) (internal citations omitted).

In contrast, at least one district court has found that the analysis in *Nawanna* does not equate to a finding that 21 U.S.C. § 841 is unconstitutional. *See United States v. Wilkerson*, 2018 WL 3715744, * 3 (S.D. W. Va. Aug. 3, 2018). The court in *Wilkerson* also noted that "while the Fourth Circuit has not explicitly stated that the 10:1 disparity is constitutional, it has affirmed the

---

[1] Hon. Mark W. Bennett, United States District Judge, Northern District of Iowa.

constitutionality of § 841[,]" and "[w]ith no guidance to the contrary, the court fails to find that the sentencing structure of 21 U.S.C. § 841 is unconstitutional." *Id.* (internal citations omitted).

Likewise, the undersigned can find no Eighth Circuit case which has explicitly ruled that the 10:1 disparity is constitutional, but the Eighth Circuit has affirmed the constitutionality of 21 U.S.C. § 841. *See e.g., United States v. Wesley*, 990 F.2d 360, 363 (8th Cir. 1993) ("Therefore, once again this court will declare 21 U.S.C. § 841 constitutional."); *United States v. Prior*, 107 F.3d 654, 659 (8th Cir. 1997) ("That distributors of varying degrees of culpability might be subject to the same sentence does not mean that the penalty system ... is unconstitutional.").

Perhaps the Eighth Circuit Court of Appeals will provide guidance on this issue in the pending appeal taken from *Harry*.[2]  Regardless, the rulings in *Nawanna* and *Harry* do not provide support for Burke's habeas claim in this action.

"While the Constitution guarantees criminal defendants a competent attorney, it 'does not insure that defense counsel will recognize and raise every conceivable constitutional claim.'" *Anderson v. United States*, 393 F.3d 749, 754 (8th Cir. 2005) (quoting *Engle v. Isaac*, 456 U.S. 107, 134 (1982)).  It has been frequently held that counsel's failure to anticipate a rule of law that has yet to be articulated by the governing courts, and failure to raise a "novel argument" based on unsettled legal questions, does not render counsel's performance constitutionally ineffective.  *See Ragland v. United States*, 756 F.3d 597, 601 (8th Cir. 2014) (internal citations omitted); *Allen v. United States*, 829 F.3d 965, 967 (8th Cir. 2016 (internal citations omitted); *Basham v. United States*, 811 F.3d 1026, 1029 (8th Cir. 2016) (internal citations omitted); and, *Dansby v. Hobbs*, 766 F.3d 809, 836 (8th Cir. 2014).

---

[2] Appeal filed June 6, 2018. Docket No. 18-2221.

Given the unsettled nature of the legal question involved, the lack of circuit court guidance on the issue, and that the district court decisions Burke relies on post-date her sentencing by nearly a year, Burke's counsel cannot be found to have provided constitutionally deficient performance for failing to object to use of the actual methamphetamine guideline in the instant case.

### 3.  No Prejudice Since Burke was Sentenced as a Career Offender

Burke's claim also lacks merit because it ignores the fact that she was sentenced as a Career Offender under U.S.S.G. § 4B1.1(a).

Laboratory testing of the substance obtained at the time of Burke's arrest confirmed the substance as 213.9 grams of a mixture of methamphetamine, or 203.8 grams of actual methamphetamine as the substance was 95.3% pure.  (ECF No. 27, ¶ 15).  At least 150 grams but less than 500 grams of methamphetamine (actual or ice) results in a base offense level of 32. U.S.S.G. § 2D1.1(c)(4).  Had the Court used the mixture of methamphetamine guideline, for at least 200 grams but less than 350 grams of methamphetamine, Burke's base offense level would have been 26.  U.S.S.G. § 2D1.1(c)(7).  Burke's analysis would have the Court stop there; however, Burke's base offense level is also affected by the determination that she is a Career Offender.  (ECF No. 27, ¶¶ 17, 28).  As such, and since the statutory maximum for the offense of conviction is 20 years (*Id.*, ¶ 92), the applicable base offense level would still be 32.  U.S.S.G. § 4B1.1(b)(3).  Thus, had defense counsel successfully argued for application of the methamphetamine (mixture) guideline as opposed to the methamphetamine (actual of ice) guideline, Burke's base offense level would still have been 32.  Therefore, Burke cannot demonstrate any prejudice from counsel's failure to challenge use of the actual methamphetamine guideline.

Accordingly, Burke's third ground for relief should be denied.

### D.  No Evidentiary Hearing is Warranted

A petitioner is entitled to an evidentiary hearing on a habeas motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief.  *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 835-36 (8th Cir. 2005) (citing 28 U.S.C. § 2255).  No evidentiary hearing is required, "where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based."  *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007); *Anjulo-Lopez v. U.S.*, 541 F.3d 814, 817 (8th Cir. 2008).  Those are the circumstances in this case.  Resolution of Burke's claims can be accomplished by reviewing the record and applicable law. A thorough review of Burke's § 2255 motion, the files and records of this case, and applicable law shows that Burke is not entitled to relief.  The summary dismissal of Burke's § 2255 motion, without an evidentiary hearing, is recommended.

### E.  No Certificate of Appealability is Warranted

A Certificate of Appealability may issue under 28 U.S.C. § 2253 only if the applicant has made a substantial showing of the denial of a constitutional right.  A "substantial showing" is one demonstrating that reasonable jurists could debate whether the petition should have been resolved in a different manner or the issues presented deserved further proceedings even though the petitioner did not prevail on the merits in the court considering his case at present.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).

For the reasons discussed above, Burke has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability should be denied.

### III.  Conclusion

For the reasons and upon the authorities discussed above, it is recommended that Burke's

-19-

Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 47) be **DISMISSED with PREJUDICE**.

It is further recommended that a request for a Certificate of Appealability be denied.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 28th day of December 2018.

/s/ Mark E. Ford

HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE